UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | |
| § | CRIMINAL ACTION NO. C-10-74-SS |
| LORENZO HERRERA-ISIDORO § | |
| aka JUAN PEREA-VALDEZ, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant Lorenzo Herrera-Isidoro AKA Juan Perea-Valdez' ("Defendant") Motion for New Trial (Dkt. No. 63), to which the United States of America ("the Government") has responded (Dkt. No. 70). The Court held an evidentiary hearing on Defendant's motion on January 21, 2011, and the Parties filed supplemental briefing thereafter (Dkt. Nos. 76 & 77). Having considered the motion, responses, arguments of counsel, evidence on record, and applicable law, the Court is of the opinion that Defendant's motion should be **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant was indicted on conspiracy to transport and harbor unlawful aliens, transportation of unlawful aliens, and illegal reentry, in violation of 8 U.S.C. §§ 1324, 1326. (Dkt. No. 39.) Defendant pled guilty to illegal reentry, and trial commenced on the remaining two counts on September 27, 2010. On September 29, 2010, the jury convicted Defendant on both counts and affirmatively answered the special verdict form, finding that Defendant's crimes placed in jeopardy the life of another person. (Dkt. No. 61.)

Defendant now moves for a new trial based on alleged juror misconduct. Specifically, Defendant claims that his second chair counsel, Joe Flores ("Flores"), was a supporter of a political opponent of the jury foreperson's mother. Based on that relationship, Defendant alleges that the foreperson was dishonest with the Court and harbored bias against Defendant because of her purported political animus towards Flores. The Government maintains that Defendant is not entitled to a new trial because the allegations of juror misconduct are unfounded, and there is no evidence the foreperson was actually biased against Defendant.

## II. LEGAL STANDARD

Under Federal Rule of Criminal Procedure 33, upon a defendant's motion, the Court may vacate any judgment and grant a new trial if the interest of justice so requires. FED. R. CRIM. PRO. 33. As a general matter, "[m]otions for new trial based on newly discovered evidence are 'disfavored and reviewed with great caution.'" *United States v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004) (quoting *United States v. Erwin*, 277 F.3d 727, 731 (5th Cir. 2001)).

In most cases, in order to receive a new trial based on newly discovered evidence, a defendant must prove that: "'(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence introduced at a new trial would probably produce an acquittal.'" *United States v. Infante*, 404 F.3d 376, 387 (5th Cir. 2005) (quoting *United States v. Jaramillo*, 42 F.3d 920, 924 (5th Cir. 1995)). However, when the newly discovered evidence a defendant wishes to present is potential juror misconduct, the Fifth Circuit has followed the Supreme Court opinion in *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548 (1984). *Montoya v. Scott*, 65 F.3d 405, 418 (5th Cir. 1995).

In *McDonough*, a juror allegedly failed to disclose a material fact during voir dire, which prevented the defense from challenging the juror for cause. Justice Rehnquist wrote in his plurality opinion that:

> to obtain a new trial is such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause.

464 U.S. at 556. Although the quoted language appears in a plurality opinion, the Fifth Circuit treats this standard as the Court's holding. *Montoya*, 65 F.3d at 418 n.24. *See also United States v. Scott*, 854 F.2d 697, 698—700 (5th Cir. 1988) (analyzing juror misconduct claim under *McDonough* and holding that juror bias warranted new trial where juror knowingly concealed fact that his brother worked in prosecutor's office and parties did not dispute that juror "would have been challenged and excused for cause had he revealed that his brother was a deputy sheriff"); *United States v. Ortiz*, 942 F.2d 903, 909 (5th Cir. 1991) (noting that juror's "familial ties to employees of law enforcement agencies may well not support a challenge for cause," but holding that juror "answered the voir dire query honestly yet inaccurately," as permitted under *McDonough*).

Thus, the Court must first determine whether a juror deliberately concealed information or purposefully provided incorrect responses. "Factors in this determination include whether the voir dire questions or responses put the juror on notice that a particular answer was required." *Robinson v. Monsanto Co.*, 758 F.2d 331, 334 (8th Cir. 1985) (citing *McCoy v. Goldston,* 652 F.2d 654, 658 (6th Cir. 1981)). The Court must then determine whether "'the undisclosed information is indicative of probable bias concerning either a material aspect of the litigation or its outcome.'" *Id.* (quoting *McCoy*, 652 F.2d at 659).

## III. ANALYSIS

### A. Did the foreperson fail to honestly answer a material question on voir dire?

After introducing counsel for both parties by name, the Court asked, "Does anyone on this panel know any of the persons who were just introduced?" (Trial Tr., Dkt. No. 68 at 26:15-23.) No one responded, including Andrea Molina ("Molina"), who would eventually become the jury foreperson. (*Id.* at 26:24.) Defendant claims that Molina was lying when she failed to answer that she knew Flores, because Molina's mother, Bea Molina ("Bea"), was a candidate in a 2010 Democratic primary election in which Flores was the chief manager/consultant of Bea's main political rival, Joe Benavidez ("Benavidez"). Based on this allegation, the Court held an evidentiary hearing in which Benavidez, Bea, and Molina all appeared as witnesses.

Benavidez testified that Flores has hosted a political television program on a local cable network for the last four years, and that he appeared on Flores' show weekly during the entire primary race. Benavidez further testified that it was common knowledge that Flores was his chief political strategist and consultant, and that on one occasion, Molina and a group of Bea's supporters had a heated public exchange with Benavidez and Flores at a campaign event. Benavidez stated that he was sure Molina and Flores knew each other before trial, although he never introduced the two, nor could he recall any personal conversations between the two. He did, however, remember pointing out a picture of Molina to Flores sometime before trial.

Bea testified that the primary race became extremely contentious and personal, and Benavidez ran a political commercial, produced by Flores, that depicted Bea as a criminal unfit for office. Bea admitted to her disdain for Benavidez and Flores for what she considered to be bad politics. Bea further stated that the campaign ad affected both herself and her family, and her late father assembled the entire family, including Molina, to discuss the allegations lodged in the commercial.

Molina testified that she did not answer any question at voir dire dishonestly. Molina stated that she resided with her mother during the campaign and during the time of Defendant's trial, and she also helped in her mother's campaign and attended campaign events, including election night events. However, she did not know Flores before the trial, did not discuss the case with her mother during the trial, and did not know Flores produced the commercial in question until after the trial. Molina also denied having any direct verbal exchanges with Flores.

Based on the evidence presented at the hearing, the Court cannot conclude that Molina knew Flores before trial or recognized him during voir dire. Although Benavidez testified that he thought Molina and Flores knew each other, he could recall only one specific incident where the two spoke towards each other (the "Bumble Bee" incident), and that was in a group setting with no actual personal conversations taking place. Moreover, in spite of Flores' contention that he has a television show and everyone knows him, there is no evidence that Molina ever watched the show, or even knew of it. Finally, Flores had as much of a chance of recognizing Molina as *vice versa*, yet despite being provided with Molina's juror information sheet during voir dire, as well as being shown a picture of Molina by Benavidez sometime before trial, Flores did not recognize Molina either.

Accordingly, the Court finds that Defendant has not shown that Molina failed to honestly answer a material question on voir dire under the first *McDonough* prong.

**B. Would a correct response provide a valid basis for a challenge for cause?**

Even if Defendant could show that Molina recognized Flores and failed to honestly answer the Court's question during voir dire, under *McDonough*, Defendant must also prove that had Molina stated that she knew Flores, her response would have provided a valid basis for a challenge for cause.

In evaluating a claim of juror misconduct, the analysis "begin[s] with the presumption that the juror is impartial, and 'it is incumbent upon the defendant to prove otherwise.'" *United States v. Collins*, 972 F.2d 1385, 1403 (5th Cir. 1992) (quoting *United States v. Wayman*, 510 F.2d 1020, 1024 (5th Cir. 1975)). No new trial is required unless the juror's failure to disclose denied the defendant his right to an impartial jury. *McDonough*, 464 U.S. at 553 (noting the defendant is "'entitled to a fair trial but not a perfect one,' for there are no perfect trials") (quoting *Brown v. United States*, 411 U.S. 223, 231–32 (1973)).

As the Government points out, "Defense seems to maintain that this requirement is met if the Court infers that not only did [Molina] know Mr. Flores and lie[] about it at voir dire, she also harbored animus towards Mr. Flores for creating the video and therefore intentionally sabotaged a federal trial to somehow get back at Mr. Flores on behalf of her mother." (Dkt. No. 77 at 7.) Defendants' argument rests on the presumption that Molina knew Flores produced the commercial before the trial concluded. However, Defendant has failed to proffer any evidence in support of this presumption.

Moreover, the alleged bias—that Molina harbored animus against defense counsel—is unrelated to the facts of the case, the subject of the litigation, or the victims, witnesses, or parties involved. Thus, assuming Molina did know of Flores through her mother's political endeavors, this fact does not "concern[] either a material aspect of the litigation or its outcome," *Robinson*, 758 F.2d at 334, nor does it justify a finding of implied bias necessary to support a challenge for cause. *See Smith v. Phillips*, 455 U.S. 209, 222 (1982) ("[S]ome extreme situations that would justify a finding of implied bias . . . include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction.") (O'Connor, J., concurring).

6

Accordingly, the Court finds that Defendant has not met his burden under the second *McDonough* prong by showing that had Molina stated she knew Flores, that response would have provided a valid basis for a challenge for cause.

**C. Do the interests of justice require a new trial?**

Although Defendant failed to meet his burden under *McDonough*, the Court has considered whether the interest of justice nonetheless requires that the verdict be set aside. *See* FED. R. CRIM. P. 33(a), and finds that it does not.

First, the Court finds that Defendant has failed to establish that his discovery of Molina's political affiliations could not have been discovered through his own due diligence. Flores represents that he is a popular and polarizing figure in local politics, yet he did not request that the Court inquire into any political involvement or affiliations of the jury members. Defense counsel also failed to question the panel about this matter when given an opportunity to do so. "A disqualification which by reasonable diligence could have been discovered before verdict may not afterwards be made the subject of an attack upon a verdict." *United States v. Wilson*, 116 F.3d 1066, 1086 (5th Cir. 1997) (citation omitted) (finding no basis for new trial when juror knew the victims who defendant admittedly killed in self defense, but defense counsel did not question panel about victims) (overruled on other grounds). *See also, e.g.*, *Ford v. United States*, 201 F.2d 300, 301 (5th Cir. 1953) ("It is the right and duty of a defendant to discover on voir dire examination . . . whether a [venireperson] is subject to disqualification for cause," and objection is "ordinarily waived by failure to assert it until after verdict, even though the facts which constitute the disqualification were not previously known to the defendant."); *Robinson*, 758 F.2d at 335 (the right to challenge a juror is waived if the basis for objection might have been discovered during voir dire had the party requested an appropriate line of questioning).

The Court further notes that the verdict of guilty was well supported by the evidence. Nine witnesses were called to testify against Defendant, including two cooperating witnesses who testified extensively about Defendant's involvement in an alien smuggling organization. The Government also presented a plethora of cell phone records linking Defendant to the organization, and Defendant's finger prints were retrieved off the seat belt of the truck where the dead alien's body was abandoned during transport.

Finally, upon being seated as a member of the jury panel, Molina took an oath that she would render a verdict "according to the law and the evidence." Defendant has failed to present any evidence that Molina did not act fairly and impartially throughout the trial or that she held any actual bias or prejudice.

Accordingly, the Court finds that the interest of justice does not require the Court to set aside the guilty verdict and grant Defendant a new trial.

## IV. CONCLUSION

For the aforementioned reasons, Defendants' Motion for New Trial (Dkt. No. 63) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 30th day of March, 2011.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE